## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA

MOBILE COUNTY BOARD OF HEALTH
AND FAMILY ORIENTED PRIMARY
HEALTH CARE CLINIC;

                 Plaintiffs,

vs.

RICHARD SACKLER; BEVERLY
SACKLER; DAVID SACKLER; ILENE
SACKLER LEFCOURT; JONATHAN
SACKLER; KATHE SACKLER;
MORTIMER D.A. SACKLER; THERESA
SACKLER; JOHN STEWART; MARK
TIMNEY; CRAIG LANDAU; RUSSELL
GASDIA; JOE COGGINS, LYNDSIE
FOWLER, MITCHELL "CHIP" FISHER,
REBECCA STERLING, VANESSA
WEATHERSPOON, CHRIS HARGRAVE,
BRANDON HASENFUSS; JOE READ;
RHODES PHARMACEUTICALS, L.P.;
RHODES TECHNOLOGIES, INC;
AMNEAL PHARMACEUTICALS, LLC;
AMNEAL PHARMACEUTICALS, INC.;
TEVA PHARMACEUTICALS USA, INC.;
CEPHALON, INC.; JOHNSON &
JOHNSON; JANSSEN
PHARMACEUTICALS, INC.;
NORAMCO, INC.; ABBOTT
LABORATORIES; ABBOTT
LABORATORIES,  INC.; ASSERTIO
THERAPEUTICS, INC.; ENDO HEALTH
SOLUTIONS, INC.;  ENDO
PHARMACEUTICALS. INC.; PAR
PHARMACEUTICAL, INC.; PAR
PHARMACEUTICALS COMPANIES,
INC.; MALLINCKRODT LLC;
MALLINCKRODT PLC; SPECGX, LLC;
ALLERGAN PLC; ALLERGAN
FINANCE, LLC; ALLERGAN SALES,
LLC; ALLERGAN USA, INC.; WATSON
PHARMACEUTICALS, INC.; ACTAVIS
LLC; ACTAVIS PHARMA, INC.; JOHN

Case No.: 19-cv-1007

(Removed from Circuit Court of Mobile
County, Alabama, Case No. 02-CV-2019-
902806)

KAPOOR; MICHAEL L. BABICH; ALEC
BURLAKOFF; MICHAEL J.  GURRY;
RICHARD M. SIMON; SUNRISE LEE;
JOSEPH A. ROWAN;  ANDA, INC.; H.D.
SMITH, LLC f/k/a H.D. SMITH
WHOLESALE DRUG CO.;  HENRY
SCHEIN, INC.; AMERISOURCEBERGEN
DRUG  CORPORATION; McKESSON
CORPORATION; CARDINAL  HEALTH,
INC.; RITE AID OF ALABAMA, INC.;
RITE AID OF  MARYLAND, INC.; THE
KROGER CO.; KROGER LIMITED
PARTNERSHIP II;  CVS HEALTH
CORPORATION; CVS PHARMACY, INC.;
CVS INDIANA,  L.L.C.; WAL-MART
INC.; WAL-MART STORES EAST, LP;
WALGREEN  EASTERN CO., INC.;
WALGREEN CO., INC.; JOHN PATRICK
COUCH;  XIULU RUAN; PHYSICIANS
PAIN SPECIALISTS OF ALABAMA, P.C.;
THOMAS JUSTIN PALMER; BRIDGETTE
PARKER; And DOE 1-100, being those
persons,  firms, corporations, agents, servants
and/or employees who authorized, ordered
and/or  committed the acts described in this
Complaint and whose names when
ascertained will be  substituted by
amendment by Plaintiffs;

       Defendants.

**NOTICE OF REMOVAL**

PLEASE TAKE NOTICE that, pursuant to 28 U.S.C. §§ 1331, 1441, 1446, and 1367, Defendant McKesson Corporation ("McKesson"), by counsel, hereby gives timely notice of the removal of this matter from the Circuit Court of Mobile County, Alabama, to this Court. As grounds for removal, McKesson states as follows:

## I.  NATURE OF REMOVED ACTION

1.  On October 15, 2019, the Mobile County Board of Health and Family Oriented Primary Health Care Clinic ("Plaintiff") filed this action in the Circuit Court of Mobile County, Alabama, titled *Mobile County Board of Health and Family Oriented Primary Health Care Clinic v. Richard Sackler, et. al.* The court designated the case No. 02-CV-2019-902806. The Complaint names eight groups of defendants.

2.  The first group of defendants consists of Amneal Pharmaceuticals, LLC; Amneal Pharmaceuticals, Inc.; Teva Pharmaceuticals, USA, Inc.; Cephalon, Inc.; Johnson & Johnson; Janssen Pharmaceuticals, Inc.; Noramco, Inc.; Abbott Laboratories; Abbott Laboratories, Inc.; Assertio Therapeutics, Inc.; Endo Health Solutions Inc.; Endo Pharmaceuticals Inc.; Par Pharmaceutical, Inc.; Par Pharmaceutical Companies, Inc.; Mallinckrodt LLC; Mallinckrodt plc; SpecGx, LLC; Allergan Plc; Allergan Finance, LLC;  Allergan Sales, LLC; Allergan USA, Inc.; Watson Pharmaceuticals, Inc.; and Actavis LLC; Actavis Pharma, Inc. (collectively, "Manufacturer Defendants").[1]

3.  The second group of defendants consists of Anda, Inc.; H.D. Smith, LLC f/k/a H.D. Smith Wholesale Drug Co.; Henry Schein, Inc.; McKesson Corporation; Amerisourcebergen Drug Corporation; and Cardinal Health, Inc. (collectively, "Distributor Defendants").

---

[1] On November 14, 2019, Plaintiffs dismissed their claims against Rhodes Pharmaceuticals L.P. and Rhodes Technologies Inc. without prejudice.

4.      The third group of defendants consists of Rite Aid Of Alabama, Inc.; Rite Aid of Maryland, Inc.; The Kroger Co.; CVS Health Corporation; CVS Pharmacy, Inc.; CVS Indiana, L.L.C.; Walmart Inc. (incorrectly named as "Wal-Mart Inc."); Wal-Mart Stores East, LP; Walgreen Eastern Co., Inc.; and Walgreen Co. (incorrectly named as "Walgreen, Co. Inc.") (collectively, "Retail Pharmacy Defendants").

5.      The fourth group of defendants consists of Richard Sackler; Beverly Sackler[2]; David Sackler; Ilene Sackler Lefcourt; Jonathan Sackler; Kathe Sackler; Mortimer D.A. Sackler; and Theresa Sackler.

6.      The fifth group of defendants consists of John Stewart; Mark Timney; Craig Landau; Russell Gasdia; Joe Coggins; Lyndsie Fowler; Mitchell "Chip" Fisher; Rebecca Sterling; Vanessa Weatherspoon; Chris Hargrove; Brandon Hasenfuss; and Joe Read (collectively, "Purdue Defendants").

7.      The sixth group of defendants consists of John Kapoor; Michael L. Babich; Alec Burlakoff; Michael J. Gurry; Richard M. Simon; Sunrise Lee; and Joseph A. Rowan (collectively, "Insys Defendants").

8.      The seventh group of defendants consists of John Patrick Couch; Xiulu Ruan; Physicians Pain Specialists of Alabama, P.C.; Thomas Justin Palmer; and Bridgette Parker (collectively, "Prescriber Defendants").

9.      The eighth and final group of defendants consists of entities whose true names and capacities are not yet known to Plaintiffs (collectively, "Doe Defendants").

---

[2] Defendant Beverly Sackler has passed away, so her consent is not required. *See* Suggestion of Death, *In re Purdue Pharma L.P.*, No. 19-23649 (RDD), Dkt. 301 (Bankr. S.D.N.Y. Oct. 14, 2019).

10.   Plaintiff complains of over-distribution of prescription opioids into Mobile County, alleging that McKesson and the other Distributor Defendants "flooded communities with opioids in quantities that they knew or should have known exceeded any legitimate market for opioids—even the wider market for chronic pain." Compl. ¶ 624.

11.   The Complaint asserts seven counts against the Distributor Defendants:  negligence (Count I); nuisance (Count II); unjust enrichment (Count III); fraud and deceit (Count IV); wantonness (Count V); civil conspiracy (Count VI); and violations of the Alabama Deceptive Trade Practices Act, Ala. Code § 18- 19-1, *et seq.* (Count VII). *See* Compl. ¶¶ 926-1054.

12.   Although Plaintiff purports to disavow stating a federal question, Compl. ¶ 76, Plaintiff pleads, among other things, that Distributor Defendants "owe[] a duty to monitor, detect and refuse suspicious orders of prescription opioids, to report suspicious orders of prescription opioids and to prevent the diversion of prescription opioids into illicit markets[,]" *id.* ¶ 703, and that "Distributor Defendants breached their duty to monitor, detect, investigate, refuse and report suspicious orders of prescription opiates, and/or in areas from which the Distributor Defendants knew opioids were likely to be diverted." *Id.* ¶ 715.

13.   Because the duties governing reporting and shipping "suspicious" opioid orders arise from the federal Controlled Substances Act ("CSA") and its implementing regulations, Plaintiff pleads that alleged violations of federal law form the basis for its claims.

14.   On November 4, 2019, McKesson, AmerisourceBergen Drug Corporation, and Cardinal Health, Inc. moved for an enlargement of time to respond to the Complaint through December 20, 2019. The motion was granted by the Circuit Court of Mobile County on November 7, 2019.

15.   McKesson has not responded to the Complaint in state or federal court.

16.     On December 5, 2017, the Judicial Panel on Multidistrict Litigation (JPML) formed a multidistrict litigation (MDL) and transferred opioid-related actions to Judge Dan Aaron Polster in the Northern District of Ohio pursuant to 28 U.S.C. § 1407. *See In re Nat'l Prescription Opiate Litig.*, 290 F. Supp. 3d 1375 (J.P.M.L. 2015). McKesson intends to tag this case immediately for transfer to the MDL.

17.     A copy of the state court docket sheet is attached as **Exhibit 1**. In accordance with 28 U.S.C. § 1446(a), copies of all documents filed or served upon McKesson in the state court action are attached as **Exhibit 2**.

## II.     TIMELINESS OF REMOVAL

18.     McKesson was served with the Complaint on October 21, 2019.

19.     In accordance with 28 U.S.C. § 1446(b), this Notice of Removal is timely filed within 30 days of service of Plaintiffs' Complaint. *See Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 354-56 (1999) (30-day removal period begins to run upon service of summons and complaint).

20.     "If defendants are served at different times, and a later-served defendant files a notice of removal, any earlier-served defendant may consent to the removal even though that earlier-served defendant did not previously initiate or consent to removal." 28 U.S.C. § 1446(b)(2)(C).

## III.     PROPRIETY OF VENUE

21.     Venue is proper in this district under 28 U.S.C. § 1441(a) because the state court where the suit has been pending is in this district.

## IV.     BASIS OF REMOVAL

22.     Removal is proper pursuant to 28 U.S.C. §§ 1441 and 1331 because Plaintiffs' claims present a federal question under the CSA, 21 U.S.C. §§ 801, *et seq.*

23.     The original jurisdiction of the district courts includes jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

24.     "Whether a case 'arises under' federal law for purposes of § 1331" is governed by the "well-pleaded complaint rule." *Holmes Grp., Inc. v. Vornado Air Circulation Sys., Inc.*, 535 U.S. 826, 830 (2002).

25.     Even when state law creates the causes of action, a complaint may raise a substantial question of federal law sufficient to warrant removal if "vindication of a right under state law necessarily turn[s] on some construction of federal law." *Merrell Dow Pharm. Inc., v. Thompson*, 478 U.S. 804, 808-09 (1986) (citation omitted). Federal jurisdiction is established if there is no "state law grounding for the duty that the [plaintiff] would need to establish for the Defendants to be liable," because the absence of any such state source "means that that duty would have to be drawn from federal law." *Bd. of Commissioners of Se. Louisiana Flood Prot. Auth. v. Tennessee Gas Pipeline Co., L.L.C.*, 850 F.3d 714, 723 (5th Cir. 2017).[3]

---

[3] A defendant need not overcome any artificial presumptions against removal or in favor of remand. In *Breuer v. Jim's Concrete of Brevard, Inc.*, 538 U.S. 691 (2003), the Supreme Court unanimously held that the 1948 amendments to the general federal removal statute, 28 U.S.C. § 1441(a), trumped the Court's prior teachings in *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100 (1941), and its antecedents, that federal jurisdictional statutes must be strictly construed against any recognition of federal subject matter jurisdiction, with every presumption indulged in favor of remand. *Id*. at 697-98 ("[W]hatever apparent force this argument [of strict construction against removal] might have claimed when *Shamrock* was handed down has been qualified by later statutory development. . . . Since 1948, therefore, there has been no question that whenever the subject matter of an action qualifies it for removal, *the burden is on a plaintiff to find an express exception*." (emphasis added)); *see also Exxon Mobil Corp. v Allapattah Servs., Inc.*, 545 U.S. 546, 558 (2005) (construing 1990 enactment of 28 U.S.C. § 1367, authorizing supplemental federal subject matter jurisdiction, and holding: "We must not give jurisdictional statutes a more expansive interpretation than their text warrants; but it is just as important not to adopt an artificial construction that is narrower than what the text provides . . . Ordinary principles of statutory construction apply." (citation omitted)).

More recently, a unanimous Supreme Court in *Mims v. Arrow Financial Services, LLC* held: "Divestment of district court jurisdiction should be found no more readily than divestment of state court jurisdiction, given the longstanding and explicit grant of federal question jurisdiction in 28 U.S.C. § 1331." 565 U.S. 368, 379 (2012) (brackets, citations, and internal quotation marks omitted).

26.     "[F]ederal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn v. Minton*, 568 U.S. 251, 258 (2013); *see Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 315 (2005). "Where all four of these requirements are met . . . jurisdiction is proper because there is a 'serious federal interest in claiming the advantages thought to be inherent in a federal forum,' which can be vindicated without disrupting Congress's intended division of labor between state and federal courts." *Gunn*, 568 U.S. at 258 (quoting *Grable*, 545 U.S. at 313-14).

27.     As set forth below, this case meets all four requirements.[4]

28.     Although Plaintiffs ostensibly plead some of their theories of recovery against McKesson as state law claims, they base the underlying theory of liability on McKesson's alleged violations of federal law or alleged duties arising out of federal law, specifically the CSA, *i.e.*, that a portion of its otherwise lawful shipments of prescription opioids were unlawful because they were shipped in fulfillment of suspicious orders that McKesson allegedly had a duty to identify, report, and then not ship.

29.     The source of the asserted legal duty to monitor and report suspicious orders of controlled substances is the CSA, 21 U.S.C. §§ 801, *et seq.*, and its implementing regulations. The source of the asserted legal duty to suspend shipments of suspicious orders is 21 U.S.C. § 823(b) and (e), as interpreted by the Drug Enforcement Administration ("DEA") of the United States Department of Justice. Specifically, DEA interprets the public interest factors for registering distributors under the CSA, 21 U.S.C. § 823(b) and (e), to impose a responsibility on distributors to exercise due

---

[4] The substantiality inquiry as it pertains to federal question jurisdiction is distinct from the merits of the case and has no bearing on the strength of Plaintiffs' underlying claims. *See Gunn*, 568 U.S. at 260 ("The substantiality inquiry under *Grable* looks . . . to the importance of the issue to the federal system as a whole.").

diligence to avoid filling suspicious orders that might be diverted to unlawful uses. *See Masters Pharm., Inc. v. DEA*, 861 F.3d 206, 212-13 (D.C. Cir. 2017) (citing *In re Southwood Pharm., Inc.*, Revocation of Registration, 72 Fed. Reg. 36,487, 36,501, 2007 WL 1886484 (DEA July 3, 2007), as source of DEA's "Shipping Requirement").

30.     Plaintiffs' theories of liability against McKesson and other Distributor Defendants, as pleaded in the Complaint, are predicated on allegations that McKesson and Distributor Defendants breached alleged duties under the CSA to implement effective controls to detect and report "suspicious" pharmacy orders for prescription opioids and—crucial to Plaintiffs' claims—to refuse to ship such orders to Alabama pharmacies.

31.     Specifically, Plaintiffs invoke federal law and plead that McKesson and the other Distributor Defendants violated federal law with, among others, the following allegations:

a.     "In addition to reporting all suspicious orders, the Distributor Defendants must also stop shipment on any order which is flagged as suspicious and only ship orders which were flagged as potentially suspicious if, after conducting due diligence, the recipient can determine that the order is not likely to be diverted into illegal chanels. *See Southwood Pharm., Inc.*, 72 Fed. Reg. 36,487, 36,501 (Drug Enfn't Admin. July 3, 2007); *Masters Pharmaceutical, Inc. v. Drug Enforcement Administration*, 861 F. 3d 206 (D.C. 2017). Regardless, all flagged orders must be reported." Compl. ¶ 586.

b.     "The Court of Appeals for the District of Columbia Circuit recently issued its opinion affirming that a wholesale drug distributor does, in fact, have duties beyond reporting. In *Masters Pharmaceuticals*, the Court upheld the revocation of Masters Pharmaceutical's license and determined that DEA regulations require that in addition to reporting suspicious orders, distributors

must decline to ship the order, or conduct some due diligence and -- if it is able to determine that the order is not likely to be diverted into illegal channels -- ship the order." *Id.* ¶ 780 (internal quotation marks omitted).

c.      "Because of the Distributor Defendants' refusals to abide by their legal obligations, the DEA has repeatedly taken administrative action to attempt to force compliance. For example, in May 2014, the United States Department of Justice, Office of the Inspector General, Evaluation and Inspections Divisions, reported that the DEA issued final decisions in 178 registrant actions between 2008 and 2012. As noted above, the Office of Administrative Law Judges issued a recommended decision in a total of 117 registrant actions before the DEA issued its final decision, including 76 actions involving orders to show cause and 41 actions involving immediate suspension orders." *Id.* ¶ 781 (footnote omitted).

d.      "The litany of state and federal actions against the Distributor Defendants demonstrate that they routinely, and as a matter of standard operating procedure, violated their legal obligations under the CSA and other laws and regulations that govern the distribution and dispensing of prescription opioids." *Id.* ¶ 789.

e.      "Alabama law and the CSA require that the Defendants know their customers, which includes an awareness of the customer base, knowledge of the average prescriptions filled each day, the percentage of controlled substances compared to overall purchases, a description of how the dispenser fulfills its responsibility to ensure that prescriptions filled are for legitimate medical

purposes, and identification of physicians and bogus centers for the alleged treatment of pain that are the dispenser's most frequent prescribers." *Id.* ¶ 934.

f.    "Defendants violated both State law and Federal Controlled Substances Act in failing to report suspicious orders of opioid pain medications in Alabama." *Id.* ¶ 930.

32.    In its Complaint, Plaintiffs fail to specifically identify a state law source for a requirement that wholesale pharmaceutical distributors owe a duty to "refuse to fill suspicious orders of prescription opiates," Compl. ¶ 63, or "halt orders that they knew or should have known were suspicious . . . ." *Id.* ¶ 580. While Plaintiffs cite to provisions of the Alabama Uniform Controlled Dangerous Substances Act, Ala. Code 1975 §§ 20-2-1 *et seq.* ("AUCSA"), and the Alabama Administrative Code, they fail to identify *any* specific provision of these state laws that would require distributors to halt suspicious or unusual orders of prescription opioids.[5] To the contrary, Plaintiffs rely on decisions by *federal* courts interpreting the scope of duties imposed by the *federal* CSA for the source of the alleged stop-shipment duty. *See* Compl. ¶¶ 586, 780. Thus, Plaintiffs' claims against Distributor Defendants, as Plaintiff pleads them, raise federal issues.

33.    Plaintiffs' theory of liability also relies on an expansive reading of federal law that calls into question an agency determination. Plaintiffs allege not only that Distributor Defendants should have detected and reported discrete suspicious orders by their respective individual pharmacy

---

[5] As Plaintiffs do not deny, the AUCSA requires registrants to comply with routine recordkeeping requirements but does not mention, much less impose duties relating to the shipment of allegedly suspicious orders. While Ala. Admin. Code r. 680-X-2-.23 requires distributors to forward "[c]opies of records and reports required by the [DEA] concerning increases in purchases or high or unusual volumes purchased by pharmacies," it does not impose any duty to halt purportedly suspicious orders. To the extent that Plaintiff contends that Defendants breached an obligation to "comply with applicable federal . . . laws and regulations" Compl. ¶ 930 (citing Ala. Admin. Code r. 680-X-2-.23), the Complaint raises a claim that necessarily requires the Court to interpret, construe, and apply federal law.

customers, but that Distributor Defendants should have recognized that the total volume of prescription opioids distributed by all wholesalers to various regions was suspicious or unreasonable. *See, e.g.*, Compl. ¶ 7 ("Excessive numbers of opioids have been dispensed in Plaintiffs' communities . . . From 2006 to 2012, there were 150,242,536 prescription pain pills, enough for 52 pills per person per year, supplied to Mobile County, Alabama"); *id.* ¶ 720 ("The sheer volume of prescription opioids distributed to pharmacies in various areas, and/or to pharmacies from which the Distributor Defendants knew the opioids were likely to be diverted, was excessive for the medical need of the community and facially suspicious.").

34.     To succeed on that theory, Plaintiffs would thus have to show that the total quantity of prescription opioids that all pharmaceutical distributors distributed was excessive or unreasonable. However, the total amount of prescription opioids distributed in any given year turns on annual aggregate production quotas established by DEA. Specifically, DEA must "determine the total quantity of each basic class of controlled substance listed in Schedule I or II necessary to be manufactured during the following calendar year to provide for the estimated medical, scientific, research and industrial needs of the United States, for lawful export requirements, and for the establishment and maintenance of reserve stocks." 21 C.F.R. § 1303.11(a). In making this determination, DEA must consider "[p]rojected demand" for such substances. 21 C.F.R. § 1303.11(b). Thus, to show that the total quantity of prescription opioids that Distributor Defendants distributed was unreasonable, Plaintiffs would have to show that the annual aggregate production quotas set by DEA, pursuant to a federal statute, were themselves unreasonable.[6]

---

[6] Moreover, 21 U.S.C. § 827(d)(1) requires Distributor Defendants to report to DEA "every sale, delivery or other disposal" by them of prescription opioids. In other words, it has been the case for years that each Distributor Defendant has reported to DEA the total volume of prescription opioids it distributed. To succeed on its theory of liability that Distributor Defendants should have recognized and reported that the total volume of prescription opioids was unreasonable, Plaintiffs would have to show that Distributor Defendants' existing reporting to DEA was inadequate.

35.     The federal question presented by Plaintiffs' claims therefore is "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn*, 568 U.S. at 258.

36.     *First*, Plaintiffs' state law claims "necessarily raise" a federal question because "the right to relief depends upon the construction or application of federal law." *PNC Bank, N.A. v. PPL Elec. Util. Corp.*, 189 F. App'x 101, 104 n.3 (3d Cir. 2006) (internal quotations and citation omitted); *see also North Carolina ex rel. N.C. Dep't of Admin. v. Alcoa Power Generating, Inc.*, 853 F.3d 140, 146 (4th Cir. 2017) ("Regardless of the allegations of a state law claim, 'where the vindication of a right under state law necessarily turns on some construction of federal law,' the claim arises under federal law and thus supports federal question jurisdiction under 28 U.S.C. § 1331." (alteration omitted)); *V.I. Hous. Auth. v. Coastal Gen. Constr. Servs. Corp.*, 27 F.3d 911, 916 (3d Cir. 1994) ("[A]n action under 28 U.S.C. § 1331(a) arises only if the complaint seeks a remedy expressly granted by federal law *or if the action requires construction of a federal statute*, or at least a distinctive policy of a federal statute requires the application of federal legal principles" (emphasis added)).

37.     As pleaded, Plaintiffs' claims against McKesson and the other Distributor Defendants require Plaintiff to establish that Distributor Defendants breached duties under federal law by failing to stop shipments of otherwise lawful orders of controlled substances into Alabama.

38.     For example, in pleading nuisance (Count II), Plaintiffs contend that "Defendants' nuisance-causing activities also include failing to implement effective controls and procedures in their supply chains to guard against theft, diversion and misuse of controlled substances, and their failure to adequately design and operate a system to detect, halt and report suspicious orders of controlled substances." Compl. ¶ 961. Similarly, in pleading negligence (Count I), Plaintiffs alleges that Distributor Defendants breached duties of care by "[c]hoosing not to or failing to report suspicious orders" and "[c]hoosing not to or failing to stop or suspend shipments of suspicious orders . . . ." *Id.*

¶ 948. As noted, the alleged duty to "stop or suspend" suspicious orders arises, if at all, out of the federal CSA and its implementing regulations. *See Benjamin v. S.C. Elec. & Gas Co.*, No. 3:16-CV-01141-JMC, 2016 WL 3180100, at *5 (D.S.C. June 8, 2016) ("While Plaintiffs' allegations of negligence appear on their face to not reference federal law, federal issues are cognizable as the source for the duty of care resulting from [the defendant's conduct]."). Thus, though plaintiffs are masters of their complaints, and they "may avoid federal jurisdiction by *exclusive* reliance on state law," *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987) (emphasis added), Plaintiff here alleges violations of federal law as the basis for its state-law claims.[7]

39.     In sum, the Complaint necessarily raises a federal issue—namely, whether Distributor Defendants violated the CSA by failing to prevent or halt suspicious orders for prescription opioids.

40.     *Second*, this federal issue is "actually disputed" because the parties disagree as to the scope of alleged duties arising under the CSA and whether Distributor Defendants violated their duties that, as Plaintiff pleads them, arise only under the CSA. Indeed, this federal issue is the "central point of dispute." *Gunn*, 568 U.S. at 259.

41.     *Third*, the federal issue presented by Plaintiffs' claims is "substantial." "The substantiality inquiry under *Grable* looks . . . to the importance of the issue to the federal system as a whole." *Gunn*, 568 U.S. at 260. Among other things, the Court must assess whether the federal

---

[7] Furthermore, it is not necessary for federal jurisdiction that McKesson establish that all of Plaintiffs' counts against it raise a federal question. Even if Plaintiffs could prove one or more of those counts without establishing a violation of federal law, this Court still has federal-question jurisdiction: "Nothing in the jurisdictional statutes suggests that the presence of related state law claims somehow alters the fact that [the] complaints, by virtue of their federal claims, were 'civil actions' within the federal courts' 'original jurisdiction.'" *City of Chicago v. Int'l College of Surgeons*, 522 U.S. 156, 166 (1997).

Because the Court has original jurisdiction over at least one count here, it has supplemental jurisdiction over Plaintiffs' remaining counts against McKesson and the other Distributor Defendants, which are so related that they "form part of the same case or controversy." 28 U.S.C. § 1367(a).

government has a "strong interest" in the federal issue at stake and whether allowing state courts to resolve the issue will "undermine the development of a uniform body of [federal] law." *Id.* at 260-62 (internal quotation and citation omitted). As the Supreme Court explained in *Grable*, "[t]he doctrine captures the commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues." 545 U.S. at 312.

42.     Plaintiffs' theories of Distributor Defendants' liability necessarily require that a court determine the existence and scope of Distributor Defendants' obligations under federal law because regulation of controlled substances is first and foremost federal regulation. Indeed, Congress designed the CSA with the intent of reducing illegal diversion of controlled substances, "while at the same time providing the legitimate drug industry with a *unified approach* to narcotic and dangerous drug control." H.R. Rep. No. 1444, 91st Cong., 2nd Sess. 1970, *as reprinted in* 1970 U.S.C.C.A.N. 4566, 4571-72.

43.     Plaintiffs' theories of Distributor Defendants' liability thus "involve aspects of the complex federal regulatory scheme applicable to" the national prescription drug supply chain, *Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 195 (2d Cir. 2005), and are "sufficiently significant to the development of a uniform body of [controlled substances] regulation to satisfy the requirement of importance to the federal system as a whole," *NASDAQ OMX Grp., Inc. v. UBS Sec., LLC*, 770 F.3d 1010, 1024 (2d Cir. 2014). The CSA itself notes that "illegal importation, manufacture, distribution, and possession and improper use of controlled substances have a substantial and detrimental effect on the health and general welfare of the American people" and that "[f]ederal control of the intrastate incidents of the traffic in controlled substances is essential to the effective control of the interstate incidents of such traffic." 21 U.S.C. § 801. Furthermore, "minimizing uncertainty over" reporting

obligations under the CSA "fully justifies resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues." *New York ex rel. Jacobson v. Wells Fargo Nat'l Bank, N.A.*, 824 F.3d 308, 317-18 (2d Cir. 2016); *see also PNC Bank, N.A.*, 189 F. App'x at 104 n.3 (state law claim "raises a substantial federal question-the interpretation of" a federal statute "over which the District Court properly exercised removal jurisdiction").

44.     Plaintiffs' attempt to enforce the CSA raises a substantial federal question even though the CSA does not provide for a private right of action. In 2005, the Supreme Court held in *Grable* that the lack of a federal cause of action does *not* foreclose federal-question jurisdiction. The Court stated that applying *Merrell Dow* too narrowly would both "overturn[ ] decades of precedent," and "convert[ ] a federal cause of action from a sufficient condition for federal-question jurisdiction into a necessary one." *Grable*, 545 U.S. at 317; *see also e.g.*, *Safe Streets All. v. Hickenlooper*, 859 F.3d 865, 897 (10th Cir. 2017) ("[Plaintiffs'] attempts to privately enforce the CSA in this manner raise, at minimum, substantial question[s] of federal law on the merits . . ."); *Nicodemus v. Union Pac. Corp.*, 440 F.3d 1227, 1236–37 (10th Cir. 2006) (noting that the existence of a federal cause of action "is not dispositive[,]" and finding state law claims based on a dispute over the scope of rights under federal land-grant statute to satisfy *Grable* despite the lack of a private right of action); *Ranck v. Mt. Hood Cable Regulatory Comm'n*, 2017 WL 1752954, at *4-5 (D. Or. May 2, 2017) (state law claims based on violations of Cable Communications Policy Act raise substantial federal questions and satisfy *Grable* even though no private right of action exists under Act).

45.     Removal is particularly appropriate here because Plaintiffs' action is but one of more than 2,300 similar actions pending in the MDL in the Northern District of Ohio. Indeed, Plaintiff pleads that both the "opioid epidemic" and the alleged improper distribution of prescription opioids by McKesson and other Distributor Defendants are "national[]" problems. *See, e.g.*, Compl. ¶¶ 12-

16. The MDL judge, Judge Polster, is attempting to achieve a national solution to this nationwide problem.[8]

46.     *Fourth*, and finally, the federal issue also is capable of resolution in federal court "without disrupting the federal-state balance approved by Congress." *Gunn*, 568 U.S. at 258. Federal courts exclusively hear challenges to DEA authority to enforce the CSA against distributors and litigating this case in state court runs the risk of the state court interpreting or applying federal requirements inconsistently with the manner in which the federal agency tasked with enforcing the CSA—the DEA—interprets and applies them. Federal jurisdiction is therefore "consistent with congressional judgment about the sound division of labor between state and federal courts governing the application of § 1331." *PNC Bank, N.A.*, 189 F. App'x at 104 n.3.

47.     In summary, removal of this action is appropriate because Plaintiffs' "state-law claim[s] necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable*, 545 U.S. at 314; *see also, e.g.*, *Gilmore v. Weatherford*, 694 F.3d 1160, 1176 (10th Cir. 2012) ("Although plaintiffs could lose their conversion claim without the court reaching the federal question, it seems that they cannot win unless the court answers that question. Thus, plaintiffs' 'right to relief necessarily depends on resolution of a substantial question of federal law.'" (citation omitted)); *Nicodemus v. Union Pac. Corp.*, 440 F.3d 1227, 1237 (10th Cir. 2006) (state law claims based on dispute over scope of rights under federal land grant statutes raise a "dispositive and contested federal issue" that satisfies *Grable*); *PNC Bank, N.A.* 189 F. App'x at 104 n.3 (state law claim based on violation of Internal Revenue Code "gives rise to federal-question

---

[8] Less than two months after the MDL was created, Judge Polster convened the first day-long settlement conference on January 31, 2018. Judge Polster required attendance by party representatives and their insurers and invited attendance by Attorneys General and representatives of the DEA and FDA.

jurisdiction" under *Grable*); *New York ex rel. Jacobson*, 824 F.3d at 315-18 (state law claims based on defendant's alleged violation of Internal Revenue Code satisfy *Grable*); *NASDAQ OMX Grp., Inc.*, 770 F.3d at 1031 (state law claims premised on violations of Exchange Act "necessarily raise disputed issues of federal law of significant interest to the federal system as a whole"); *Broder*, 418 F.3d at 196 (state law claims premised on cable provider's alleged violations of Communication Act's uniform rate requirement satisfy "*Grable* test for federal-question removal jurisdiction").

48.     To the extent that the Court determines that some, but not all, of Plaintiffs' claims state a substantial federal question, the Court can evaluate whether to retain the non-federal claims against the Distributor Defendants and Pharmacy Defendants under the doctrine of supplemental jurisdiction, 28 U.S.C. § 1367(a).

## V.    OTHER REMOVAL ISSUES

49.     Pursuant to 28 U.S.C. § 1446(b)(2)(A), all defendants that have been properly joined and served consent to removal.

50.     The following Defendants have been served in this action and consent to removal: Allergan Sales, LLC; Allergan USA, Inc.; Abbott Laboratories; Abbott Laboratories, Inc.; Amneal Pharmaceuticals LLC; Amneal Pharmaceuticals, Inc.; Assertio Therapeutics, Inc. f/k/a Depomed, Inc.; Endo Health Solutions Inc.; Endo Pharmaceuticals Inc.; Par Pharmaceutical, Inc.; Par Pharmaceutical Companies, Inc.; Johnson & Johnson; Janssen Pharmaceuticals, Inc.; Mallinckrodt LLC; SpecGx LLC; Noramco, Inc.; Richard Sackler; Beverly Sackler; David Sackler; Ilene Sackler Lefcourt; Jonathan Sackler; Kathe Sackler; Mortimer D.A. Sackler; Theresa Sackler; John Stewart; Mark Timney; Craig Landau; Russell Gasdia;[9] Joe Coggins; Lyndsie Fowler; Mitchell "Chip" Fisher;

---

[9] On September 15, 2019, Purdue and its affiliated debtors filed voluntary bankruptcy petitions for relief under Chapter 11 of the U.S. Bankruptcy Code in the U.S. Bankruptcy Court for the Southern District of New York.  The case is docketed as *In re Purdue Pharma L.P.*, No. 19-23649, and is pending before U.S. Bankruptcy Judge Robert D. Drain.  On October 11, 2019, before this action was

Rebecca Sterling; Vanessa Weatherspoon; Chris Hargrave; Brandon Hasenfuss; Joe Read;   John

Kapoor; Anda, Inc.; H. D. Smith, LLC f/k/a H. D. Smith Wholesale Drug Co.; Henry Schein, Inc.;

AmerisourceBergen Drug Corporation; Cardinal Health, Inc.; The Kroger Co.; Kroger Limited

Partnership II; CVS Health Corporation; CVS Pharmacy, Inc.; CVS Indiana, L.L.C.; Rite Aid of

Alabama, Inc.; Rite Aid of Maryland, Inc.; Walgreen Eastern Co., Inc. and Walgreen Co.; Walmart

Inc.; and Wal-Mart Stores East, LP. The Defendants listed in this paragraph expressly reserve, and

do not waive, all available defenses, including lack of personal jurisdiction.

    51.    For the following Defendants, service was not attempted, was not effected, or was

otherwise improper, and thus their consent to removal is not required: Actavis LLC; Actavis Pharma,

Inc. f/k/a Watson Pharma, Inc.; Teva Pharmaceuticals USA, Inc.; Cephalon, Inc.; Allergan plc;

---

filed, the United States Bankruptcy Court for the Southern District of New York stayed actions pending against Purdue Pharma, L.P. and Related Parties, including Richard Sackler, Beverly Sackler, David Sackler, Ilene Sackler Lefcourt, Jonathan Sackler, Kathe Sackler, Mortimer D.A. Sackler, Theresa Sackler, John Stewart, Mark Timney, Craig Landau, and Russell Gasdia.  Amended Order Pursuant to 11 U.S.C. §105(a), *In re Purdue Pharma L.P.*, No. 19-08289 (RDD), Dkt. 89 (Bankr. S.D.N.Y. Oct. 18, 2019).  On November 6, 2019, the Bankruptcy Court extended that stay through April 8, 2020.  Second Amended Order Pursuant to 11 U.S.C. §105(a), *In re Purdue Pharma L.P.*, No. 19-08289 (RDD), Dkt. 105 (Bankr. S.D.N.Y. Nov. 6, 2019).  The Bankruptcy Court's November 6 Order sets forth the procedure whereby the Bankruptcy Court will determine whether to formally extend the stay to this action, including as to Richard Sackler, Beverly Sackler, David Sackler, Ilene Sackler Lefcourt, Jonathan Sackler, Kathe Sackler, Mortimer D.A. Sackler, Theresa Sackler, John Stewart, Mark Timney, Craig Landau, and Russell Gasdia. On November 12, Purdue commenced service on plaintiffs in this action with the Bankruptcy Court's Order and other documents related to the stay, which is the first step in the procedure set forth in the November 6 Order.  It is expected that the Bankruptcy Court will soon determine whether this action is stayed as to Related Parties, including Richard Sackler, Beverly Sackler, David Sackler, Ilene Sackler Lefcourt, Jonathan Sackler, Kathe Sackler, Mortimer D.A. Sackler, Theresa Sackler, John Stewart, Mark Timney, Craig Landau, and Russell Gasdia.  Furthermore, for some or all of these defendants, service was not attempted, was not effected, or was otherwise improper, and thus their consent to removal is not required. To the extent consent of these defendants is required, they consent to removal.  By consenting to removal, none of the defendants  waive any rights or defenses and expressly reserve them, including in connection with the Bankruptcy Court's stay as well as all rights and defenses in this action, including lack of personal jurisdiction and lack of proper service.  Defendant Beverly Sackler has passed away, so her consent is not required.  *See* Suggestion of Death, *In re Purdue Pharma L.P.*, No. 19-23649 (RDD), Dkt. 301 (Bankr. S.D.N.Y. Oct. 14, 2019).

Allergan Finance, LLC f/k/a Actavis, Inc. f/k/a Watson Pharmaceuticals, Inc.;[10] Mallinckrodt plc[11]; and Michael J. Gurry. Nevertheless, they consent to removal. These Defendants expressly reserve all rights and defenses, including those related to personal jurisdiction and service of process.

52.     Further, counsel for McKesson has contacted counsel for Alec Burlakoff; Richard M. Simon; Joseph A. Rowan; John Patrick Couch; Xiulu Ruan; and Physicians Pain Specialists of Alabama, P.C., who consent to removal. These Defendants expressly reserve all rights and defenses, including those related to personal jurisdiction and service of process.

53.     Thomas Justin Palmer and Bridgette Parker are not represented by counsel, but nevertheless consent to removal.

54.     Neither Michael L. Babich nor Sunrise Lee have been served, and thus their consent to removal is not required. *Johnson v. Wellborn*, 418 F. App'x 809, 815 (11th Cir. 2011) ("The requirement that there be unanimity of consent in removal cases with multiple defendants does not require consent of defendants who have not been properly served."). Furthermore, Ms. Lee is a nominal defendant whose consent to removal is not required. *GMFS, L.L.C. v. Bounds*, 275 F. Supp. 2d 1350, 1353 (S.D. Ala. 2003) (finding that "nominal defendants need not join in or consent to removal."). Despite alleging generally that the Insys Defendants improperly marketed prescription opioids, Plaintiffs fail to plead any particular facts sufficient to hold Ms. Lee liable for the harms allegedly suffered by Plaintiffs in Mobile County or the state of Alabama. *See* Compl. ¶¶ 175-179. Thus, her presence in this litigation is nominal, and in her "absence . . . the Court can enter a final

---

[10] Allergan plc, an Irish corporation, and Allergan Finance, LLC f/k/a Actavis, Inc. f/k/a Watson Pharmaceuticals, Inc. have not been served, but nevertheless consent to removal out of an abundance of caution and expressly reserve all rights and defenses including those related to personal jurisdiction and service of process.

[11] Mallinckrodt plc is an Irish corporation that is not subject to and contests personal jurisdiction. Mallinckrodt plc nevertheless consents to removal out of an abundance of caution and expressly reserves all rights and defenses, including those related to personal jurisdiction and service of process.

judgment consistent with equity and good conscience which would not be in any way unfair or inequitable to [P]laintiff[s]." *GMFS, L.L.C.*, 275 F. Supp. 2d at 1353.

55.     The Doe Defendants have not been identified, and on information and belief, have not been served. Thus, their consent to removal is not required. *See Id.* at 1354 (holding that "fictitious defendants need not join in or consent to removal").

56.     By filing this Notice of Removal, neither McKesson nor any other Defendant waives any defense that may be available to them, and Defendants expressly reserve all such defenses, including those related to personal jurisdiction and service of process.

57.     If any question arises as to propriety of removal to this Court, McKesson requests the opportunity to present a brief and oral argument in support of its position that this case has been properly removed.

58.     Pursuant to 28 U.S.C. § 1446(d), McKesson will promptly file a copy of this Notice of Removal with the clerk of the state court where the lawsuit has been pending and serve notice of the filing of this Notice of Removal on Plaintiff.

59.     McKesson reserves the right to amend or supplement this Notice.

**WHEREFORE**, McKesson removes this action from the Circuit Court of Mobile County, Alabama, Case No. 02-CV-2019-902806.00, to this Court.

November 20, 2019                          /s/ *Harlan I. Prater, IV*
                                           Harlan I. Prater, IV
                                           Jackson R. Sharman, III
                                           Jeffrey P. Doss
                                           Brandon K. Essig
                                           Benjamin P. Harmon
                                           LIGHTFOOT, FRANKLIN & WHITE LLC
                                           The Clark Building
                                           400 20th Street North
                                           Birmingham, AL 35203
                                           hprater@lightfootlaw.com
                                           jsharman@lightfootlaw.com

jdoss@lightfootlaw.com
bessig@lightfootlaw.com
bharmon@lightfootlaw.com

*Counsel for McKesson Corporation*

/s/ *Christopher S. Berdy*
Christopher S. Berdy, Esq.
BUTLER SNOW
1819 5th Avenue North, Suite 1000
Birmingham, Alabama 35203
205-297-2200
Fax: 205-297-2201
Chris.berdy@butlersnow.com

Charles C. Lifland*
O'MELVENY & MYERS LLP
400 South Hope St.
Los Angeles, CA 90071
Tel: (213) 430-6000
Fax: (213) 430-6407
clifland@omm.com

*denotes national counsel who will seek
pro hac vice admission*

*Counsel for Johnson & Johnson, Janssen
Pharmaceuticals, Inc.*

/s/ *Daniel G. Jarcho*
Daniel G. Jarcho*
D.C. Bar No. 391837
ALSTON & BIRD LLP
950 F Street NW
Washington, DC 20004
Telephone: (202) 239-3254
Facsimile: (202) 239-333
E-mail: daniel.jarcho@alston.com

Cari K. Dawson*
Georgia Bar No. 213490
Jenny A. Hergenrother*
Georgia Bar No. 447183
ALSTON & BIRD LLP
1201 West Peachtree Street NW
Atlanta, GA 30309
Tel.: (404) 881-7000
Fax: (404) 881-7777
E-mail: cari.dawson@alston.com
E-mail: jenny.hergenrother@alston.com

*Denotes national counsel who will seek pro
hac vice admission*

22

*Counsel for Noramco, Inc.*


/s/ *George R. Irvine, III*
George R. Irvine, III, Esq.
STONE CROSBY, P.C.
8820 Highway 90
Daphne, Alabama 36526
Telephone: 251-626-6696
Facsimile: 251-626-2617
girvine@stonecrosby.com

*Counsel for Rite Aid of Alabama, Inc., and
Rite Aid of Maryland, Inc.*


/s/ *John A. Henig, Jr.*
John A. Henig, Jr. (HEN019)
COPELAND, FRANCO, SCREWS & GILL,
P.A.
444 South Perry Street (36104)
P.O. Box 347
Montgomery, AL  36101-0347
Telephone:  334-834-1180
Facsimile:  334-834-3172
Email: henig@copelandfranco.com

John P. McDonald, Esq.*
C. Scott Jones, Esq.
Brandan J. Montminy, Esq.*
LOCKE LORD - DALLAS
Ste. 2800
2200 Ross Avenue
Dallas, Texas 75201
214-740-8445
Email: jpmcdonald@lockelord.com
sjones@lockelord.com
brandan.montminy@lockelord.com

*\*denotes national counsel who will seek
pro hac vice admission*

*Counsel for Henry Schein, Inc.*

/s/ *Steven A. Reed*
Steven A. Reed*
1701 Market Street
Philadelphia, PA 19103
(215) 963-5000
steven.reed@morganlewis.com

Brian M. Ercole*
200 S. Biscayne Blvd., Suite 5300
Miami, FL  33131-2339
(305) 415-3416
brian.ercole@morganlewis.com

*denotes national counsel who will seek
pro hac vice admission*

*Counsel for Teva Pharmaceuticals USA,
Inc., Cephalon, Inc., Actavis LLC and
Actavis Pharma, Inc.*

/s/ *Sela S. Blanton*
Sela S. Blanton, Esq.
Betsy Richardson, Esq.
BAINBRIDGE, MIMS, ROGERS &
SMITH, LLP
600 Luckie Drive, Suite 415
P.O. Box 530886
Birmingham, Alabama 35253
Office main: (205) 879-1100
Fax: (205) 879-4300
sblanton@bainbridgemims.com
brichardson@bainbridgemims.com

*Counsel for The Kroger Co., and Kroger
Limited Partnership II*

<u>/s/ *Joshua A. Klarfeld*</u>
Joshua A. Klarfeld, Esq.
Sarah M. Benoit, Esq.
ULMER & BERNE LLP
600 Vine Street, Suite 2800
Cincinnati, Ohio 45202
614-229-0016
jklarfeld@ulmer.com
sbenoit@ulmer.com

*Counsel for Amneal Pharmaceuticals, Inc., and Amneal Pharmaceuticals LLC*

/s/ Donald C. Radcliff
Donald C. Radcliff (RADCD1662)
BRADY RADCLIFF & BROWN, LLP
61 Saint Joseph Street, Suite 1600
Mobile, Alabama  36602
251-405-0071
dradcliff@brblawyers.com

John A. McCauley*
VENABLE LLP
750 E. Pratt Street
Suite 900
Baltimore, MD 21202
T: (410) 244-7655
F: (410) 244-7742
JMcCauley@Venable.com

*denotes national counsel who will seek pro
hac vice admission

Counsel for Abbott Laboratories and Abbott
Laboratories, Inc.


/s/ Donna Welch
Donna Welch, P.C.*
Martin L. Roth*
Timothy Knapp*
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, Illinois 60654
(312) 862-2000
donna.welch@kirkland.com
martin.roth@kirkland.com
timothy.knapp@kirkland.com

Jennifer G. Levy, P.C.*
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, NW
Washington, DC 20004
(202) 389-5000
jennifer.levy@kirkland.com

*denotes national counsel who will seek
pro hac vice admission

Counsel for Allergan Sales, LLC and Allergan
USA, Inc.

26

/s/ Sara M. Turner
Sara M. Turner (TUR061)
Leigh Anne Fleming (HAM080)
BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, PC
Wells Fargo Tower
420 20th Street North, Suite 1400
Birmingham, Alabama 35203-5202
Telephone: (205) 328-0480
Facsimile: (205) 322-8007
smturner@bakerdonelson.com
lfleming@bakerdonelson.com

Sean O. Morris*
ARNOLD & PORTER KAYE
SCHOLER LLP
777 S. Figueroa St., Suite 4400
Los Angeles, CA 90017
Tel: (213) 243-4000
sean.morris@arnoldporter.com

*denotes national counsel who will seek
pro hac vice admission

Counsel for Endo Health Solutions Inc., Endo
Pharmaceuticals Inc., Par Pharmaceutical,
Inc. and Par Pharmaceutical Companies, Inc.


/s/ James W. Matthews
James W. Matthews, Esq. *
Ana M. Francisco, Esq. *
Katy E. Koski, Esq. *
FOLEY & LARDNER LLP
111 Huntington Avenue
Boston, Massachusetts 02199
Tel: 617.342.4000
Fax: 617.342.4001
jmatthews@foley.com
afrancisco@foley.com
kkoski@foley.com

*denotes national counsel who will seek
pro hac vice admission

Counsel for Anda, Inc.

27

*/s/ Kevin M. Sadler*
Kevin M. Sadler*
BAKER BOTTS LLP
1001 Page Mill Road, Bldg. One, Suite 200
Palo Alto, California 94304
Email: kevin.sadler@bakerbotts.com
Telephone:  (650) 739.7518
Facsimile:  (650) 739.7618

Scott D. Powers*
David T. Arlington*
BAKER BOTTS LLP
98 San Jacinto Boulevard, Suite 1500
Austin, Texas 78701
Email: scott.powers@bakerbotts.com
Email: david.arlington@bakerbotts.com
Telephone:  (512) 322-2678
Facsimile:  (512) 322-8392

*denotes national counsel who will seek pro
hac vice admission*

*Counsel for Defendant Assertio
Therapeutics, Inc. f/k/a Depomed, Inc.*

*/s/ Tiffany J. deGruy*
Tiffany J. deGruy, Esq.
BRADLEY
One Federal Place
1819 5th Avenue North
Birmingham, AL 35203
Tel: (205) 521-8354
Fax: (205) 488-6354
tdegruy@bradley.com

*Counsel for Cardinal Health, Inc.*

*/s/ H. Lanier Brown, II*
H. Lanier Brown, II, Esq.
J. Patrick Strubel, Esq.
David L. Brown, Jr. Esq.
WATKINS & EAGER, PLLC
Saks Building
1904 1st Ave. N., Suite 300
Birmingham, Alabama 35203
(205)598-2110
lbrown@watkinseager.com
pstrubel@watkinseager.com
dbrown@watkinseager.com

*Counsel for AmerisourceBergen Drug
Corporation and H. D. Smith, LLC f/k/a H.
D. Smith Wholesale Drug Co.*

29

*/s/ Andrew P. Campbell*
Andrew P. Campbell
Cason M. Kirby
CAMPBELL PARTNERS, LLC
505 20th Street North, Suite 1600
Birmingham, Alabama 35203
Telephone:  (205) 224-0752
Facsimile:  (205) 383-2672
andy@campbellpartnerslaw.com
cason@campbellpartnerslaw.com

Conor B. O'Croinin*
ZUCKERMAN SPAEDER LLP
100 East Pratt Street, Suite 2440
Baltimore, MD 21202-1031
Telephone: (410) 949-1160
cocroinin@zuckerman.com

*\* denotes national counsel who will seek pro hac vice admission*

*Attorneys for Defendant CVS Health Corporation; CVS Pharmacy, Inc.; CVS Indiana, L.L.C.*

*/s/ Anne Stone Sumblin*
Anne Stone Sumblin, Esq.
Stone Sumblin Law LLC
600 Highway 52
P.O. Box 345
Kinston, Alabama 36453
Phone: 334.565.3380
Fax: 334.565.3076
Anne@stonesumblinlaw.com

*Counsel for Walgreen Eastern Co., Inc.,
Walgreen Co., Inc.*


*/s/ Alan T. Hargrove, Jr.*
Alan T. Hargrove, Jr. (HAR236)
Dennis R. Bailey (BAI028)
Rushton, Stakely, Johnston & Garrett, P.A.
Post Office Box 270
Montgomery, Alabama 36101-0270
(334) 206-3100
(334) 481-0812 fax
ath@rushtonstakely.com
drb@rushtonstakely.com

Christopher Lovrien*
Sarah G. Conway*
JONES DAY
555 S. Flower St., 50th Floor
Los Angeles, CA 90071
Telephone: (213) 243-2629
Facsimile: (213) 243-2539
cjlovrien@jonesday.com
sgconway@jonesday.com

* *denotes national counsel who will seek pro
hac vice admission*

*Counsel for Walmart Inc. and Wal-Mart
Stores East, LP*

/s/ Kurt M. Mullen
Brian T. Kelly*
Kurt M. Mullen*
Mark T. Knights*
NIXON PEABODY LLP
53 State Street
Boston, MA 02109
Telephone: (617) 345-1000
bkelly@nixonpeabody.com
kmullen@nixonpeabody.com
mknights@nixonpeabody.com

*denotes national counsel who will seek pro hac vice admission

Counsel for John N. Kapoor

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the above and foregoing was electronically filed on this the 20th day of November, 2019 using the CM/ECF system which will send notification to all counsel of record, including counsel for the Plaintiffs, listed below. Should the Notice of Electronic Filing indicate that notice needs to be delivered by other means, I certify that a copy will be sent via U.S. Mail, postage prepaid and properly addressed.

Mary Beth Mantiply
Mantiply & Associates
1307 Main Street
Daphne, Alabama 36526
Phone: (251) 625-4040
mbmantiplylaw@gmail.com

George M. Walker
Rebecca Parks
Hand Arendall Harrison Sale LLC
Post Office Box 123
Mobile, AL 36601
Phone: (251) 432-5511
gwalker@handfirm.com
rparks@handfirm.com

_/s/  Harlan I. Prater, IV_____
OF COUNSEL