IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| MOBILE COUNTY BOARD OF HEALTH *et al.*, | ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | Civil Action: 1:19-01007-KD-B |
| RICHARD SACKLER, *et al.*, | ) ) | |
| Defendants. | ) | |

## ORDER

This matter is before the Court on sixteen Defendants' motions to stay (Docs. 7, 23); Plaintiffs' motion to remand (Doc. 3); and certain Defendants notice of bankruptcy (Doc. 20). Specifically, the Manufacturer Defendants' (Johnson & Johnson; Janssen Pharmaceuticals, Inc.; Allergan Sales, LLC; Allergan USA, Inc.; Endo Health Solutions, Inc.; Endo Pharmaceuticals, Inc.; Par Pharmaceutical, Inc.; Par Pharmaceuticals Companies, Inc.; Teva Pharmaceuticals USA, Inc.; Cephalon, Inc; Actavis LLC; Actavis Pharma, Inc.; Mallinckrodt LLC; and SpecGx LLC) motion to stay (Doc. 7), Plaintiffs' opposition (Doc. 11), Defendants' Reply (Doc. 15), and Plaintiffs' sur-reply (Doc. 16-1). Separately, the Distributer Defendants (McKesson Corporation, Cardinal Health, Inc., H.D. Smith, LLC f/k/a H.D. Smith Wholesale Drug Co., and AmerisourceBergen Drug Corporation) filed a motion to stay. (Doc. 23). Also before the Court are Plaintiffs' motion to remand (Doc. 3); Defendant McKesson Corporation's Opposition (Doc. 24); and Plaintiffs response (Doc. 26).

The Sackler Defendants (Ilene Sackler Lefcourt, David Sackler, Jonathan Sackler, Kathe Sackler, Mortimer D.A. Sackler, Richard Sackler and Theresa Sackler) filed a "Notice of Fourth Amended Bankruptcy Court Order Enjoining the Continuation of this Proceeding as to the

1

Individual Former Directors." (Doc. 20). The Court ordered briefing on the impact of this injunction on the pending motions. (Doc. 22). Parties submitted briefs in response (Docs. 29, 30).

I.      **Background**

On October 15, 2019, Plaintiffs Mobile County Board of Health and Family Oriented Primary Health Care Clinic filed an action in the Circuit Court of Mobile County, Alabama against eight groups of defendants (Circuit Court of Mobile County 02-CV-2019-902806.00).[1] Plaintiffs contend "Defendants engaged in a wide variety of unlawful conduct that caused, exacerbated, and perpetuated the opioid epidemic in the three counties in which they provide services." The complaint asserts six (6) causes of action against all defendants based on Alabama law: (1) negligence; (2) nuisance; (3) unjust enrichment; (4) fraud and deceit; (5) wantonness; (6) deceptive trade practices. (Doc. 1-2 at 164-179). The complaint asserts a separate claim of civil conspiracy

---

[1] Plaintiffs complaint identifies the Defendants in eight groups (Doc. 1-2 at 66-86). The **first** group of Defendants are the **Manufacturer Defendants**: Amneal Pharmaceuticals, LLC; Amneal Pharmaceuticals, Inc.; Teva Pharmaceuticals, USA, Inc.; Cephalon, Inc.; Johnson & Johnson; Janssen Pharmaceuticals, Inc.; Noramco, Inc.; Abbott Laboratories; Abbott Laboratories, Inc.; AssertioTherapeutics, Inc.; Endo Health Solutions Inc.; Endo Pharmaceuticals Inc.; Par Pharmaceutical, Inc.; Par Pharmaceutical Companies, Inc.; Mallinckrodt LLC; Mallinckrodt plc; SpecGx, LLC; Allergan Plc; Allergan Finance, LLC; Allergan Sales, LLC; Allergan USA, Inc.; Watson Pharmaceuticals, Inc.; and Actavis LLC; Actavis Pharma, Inc. The **second** group of Defendants are the **Distributor Defendants**: Anda, Inc.; H.D. Smith, LLC f/k/a H.D. Smith Wholesale Drug Co.; Henry Schein, Inc.; McKesson Corporation; Amerisourcebergen Drug Corporation; and Cardinal Health, Inc. The **third** group of Defendants are the **National Retail Pharmacy Defendants**: Rite Aid Of Alabama, Inc.; Rite Aid of Maryland, Inc.; The Kroger Co.; CVS Health Corporation; CVS Pharmacy, Inc.; CVS Indiana, L.L.C.; Walmart Inc.; Wal-Mart Stores East, LP; Walgreen Eastern Co., Inc.; and Walgreen Co. The **fourth** group of Defendants are the **Sackler Defendants**: Richard Sackler; Beverly Sackler; David Sackler; Ilene Sackler Lefcourt; Jonathan Sackler; Kathe Sackler; Mortimer D.A. Sackler; and Theresa Sackler. (AKA "Individual Former Director Defendants" (Doc. 20)). The **fifth** group of Defendants are the **Purdue Defendants**: John Stewart; Mark Timney; Craig Landau; Russell Gasdia; Joe Coggins; Lyndsie Fowler; Mitchell "Chip" Fisher; Rebecca Sterling; Vanessa Weatherspoon; Chris Hargrove; Brandon Hasenfuss; and Joe Read. The **sixth** group of Defendants are the **Insys Defendants**: John Kapoor; Michael L. Babich; Alec Burlakoff; Michael J. Gurry; Richard M. Simon; Sunrise Lee; and Joseph A. Rowan. The **seventh** group of Defendants are the **Pill Mill Defendants**: John Patrick Couch; Xiulu Ruan; Physicians Pain Specialists of Alabama, P.C.; Thomas Justin Palmer; and Bridgette Parker. The **eighth** group of Defendants are the **Defendants' Agents and Affiliated persons**, consisting of entities whose true names and capacities are not yet known to Plaintiffs.

against the Marketing Defendants, Distributor Defendants, and National Retail Pharmacy Defendants. (Id. at 176).

On November 20, 2019, Defendant McKesson Corporation (McKesson) filed a notice of removal, removing this case from the Circuit Court of Mobile County to this Court pursuant to federal question jurisdiction. (Doc. 1). McKesson contends that the bases of Plaintiffs' complaint "arise from the federal Controlled Substances Act ("CSA") and its implementing regulations…" and Plaintiffs therefore allege violations of federal law. (Id. at 5).

On November 11, 2019, Plaintiffs moved to remand the case to the Circuit Court of Mobile County. (Doc. 3). Plaintiffs contend removal was improper stating:

> All of [their] claims arise under and are based upon Alabama law; there is no assertion in the Complaint that Plaintiffs are proceeding under any right of action created or authorized by Congress or otherwise created or authorized by any federal law or regulation.

(Doc. 3 at 4). McKesson opposes Plaintiffs' motion to remand essentially reasserting its removal arguments. (Doc. 24). To date, no other defendants have responded to Plaintiffs motion to remand.

On November 27, 2019, the Manufacturer Defendants moved "for a temporary stay of all proceedings in this case until the Judicial Panel on Multidistrict Litigation (JPML) renders a final decision on whether to transfer this action to the Multidistrict Litigation in the Northern District of Ohio, *In re National Prescription Opiate Litig.*, No. 1:17-md-2804 (Opiate MDL)." (Doc. 7). On December 27, 2019, McKesson, Cardinal Health, Inc., H.D. Smith, LLC f/k/a H.D. Smith Wholesale Drug Co., and AmerisourceBergen Drug Corporation also filed a motion to stay these proceedings "offer[ing] further grounds for this Court to stay proceedings and defer consideration of Plaintiffs' remand motion." (Doc. 23 at 5, n.2). To date, the remaining defendants have not filed like motions to stay, consent to the pending motions to stay, or any other responses to these pending motions.

On December 18, 2019, the Sackler Defendants filed a "Notice of Fourth Amended Bankruptcy Court Order Enjoining the Continuation of this Proceeding to the Individual Former Directors." (Doc. 20). This filing was to notify the Court of the injunction issued by the U.S. Bankruptcy Court for the Southern District of New York's order (last amended December 9, 2019), encompassing this proceeding as to the Sackler Defendants. (Id.). On December 23, 2019, the Court ordered the parties to submit briefings as to the impact of the injunction on the Court's authority to rule on the pending motions to stay and remand. The parties submitted their briefings and contend that the Court may decide the motion to remand without violating the Fourth Amended Bankruptcy Injunction. (Doc. 29 at 1-2; Doc. 30 at 1).

**II.     Discussion**

A district court has the inherent authority to stay proceedings in the cases pending before it. Landis v. North American Co., 299 U.S. 248 (1936); CTI-Container Leasing Corp v. Uiterwyk, 685 F.2d 1284 (11th Cir. 1982). "[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." Landis, 299 U.S. at 254. When a district court has before it both a motion to remand and motion to stay, as is the case here, the Court "possesses the jurisdiction to resolve the motion to remand prior to a transfer of a case by the JPML." Wood v. Merck & Co., Inc., 2008 WL 4642615 (M.D. Fla. 2008); Rule 1.5 of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation. A district court may also grant the motion to stay without ruling on the motion to remand because the transferee MDL judge can also rule on the pending motion to remand. In re Vioxx Products Liability Litigation, 360 F.Supp.2d 1352, 1354 (2005).

Fortunately, the undersigned is not without guidance for how to proceed in these unique circumstances. Last year, the Southern District of Alabama handled a similar situation in DCH Health Care Authority, et al., v. Purdue Pharma L.P., et al., 2019 WL 6493932 (S.D. Ala. Dec. 3, 2019).[2] The Court finds this case helpful to the resolution of the motions before it in light of factual and legal similarities. The DCH case thoroughly addressed pending motions to stay and a motion to remand in a similar, complex opioid case. In that case, plaintiffs asserted six state law claims, identical to six of the seven claims asserted here.[3] Defendants in DCH removed the case from state court on the same legal grounds as the Defendants removed this case to this court. Additionally, the defendants in DCH and the Defendants in this case raise virtually identical claims and arguments, resulting in significant overlap of issues and analyses.

A. **Bankruptcy Injunction**

On December 18, 2019, the Sackler Defendants filed a notice of an injunction from the United States Bankruptcy Court for the Southern District of New York. (Doc. 20). The Sackler Defendants filed this notice in order to stop the continuation of these proceedings as against them. (Id. at 2). On December 23, 2019, the Court ordered the parties to submit briefing as to the impact of this injunction on the Court's authority to decide the pending motions to stay and remand. The parties responded that this injunction did not alter the Court's authority to rule on the motion to remand. (Docs. 29, 30). The Courts review of case law reveals the same. See Diebel v. S.B. Trucking Co.,

---

[2] Though decisions by other judges are not binding on this Court, these decisions are persuasive. Fishman & Tobin, Inc. v. Tropical Shipping & Const. Co., Ltd., 240 F.3d 956, 965 (11th Cir. 2001). See also Griffith v. Wal-Mart Stores East, L.P., 884 F.Supp.2d 1218, 1225 (N.D. Ala. 2012) (finding the logic of sister district courts persuasive given the factual similarities in the cases and the thorough analysis of the other judges).

[3] The Plaintiffs here assert one additional state law claim pursuant to the Alabama Deceptive Trade Practices Act. (Doc. 1-2 at 13).

262 F.Supp.2d 1319, 1333 (S.D. Fla. 2003) (finding the automatic stay did not prevent the court from remanding an improperly removed action); Gallaher v. Waving Leaves, Inc., 2006 WL 898130 at *2 (N.D. W.Va. 2006) (the automatic stay does not bar consideration of a motion to remand an improperly removed case); Verizon Communications, Inc. v. Northpoint Communications Group, Inc., 262 B.R. 891, 892–93 (D. Del. 2001) (same); Baxter Healthcare Corp. v. Hemex Liquidation Trust, 132 B.R. 863, 867 (N.D. Ill. 1991) (same); Liljeberg Enterprises International, LLC v. Vista Hospital, Inc., 2004 WL 2725965 at *1 (E.D. La. 2004) (the automatic stay does prohibit considering such motions); Ayati-Ghaffari v. J.P. Morgan Chase Bank, N.A., 2018 WL 6737415 (E.D. Tex. 2018) (same).

**B.    Motion to Stay**

The Defendants seek a stay of these proceedings until the Judicial Panel on Multidistrict Litigation renders a final decision on whether to transfer this case to the multidistrict litigation. (Doc. 7 at 2, 4 (indicating this case "was tagged for transfer to the MDL November 22, 2019)). Defendants ask the Court to defer ruling on Plaintiffs' motion to remand and/or otherwise stay these proceedings pending the decision from the JPML. (Id. at 7).

The Defendants arguments are virtually identical to those raised by the defendants in DCH. Notably, the Defendants reference cases within this district and the Eleventh Circuit that have stayed proceedings pending a decision from the JPML with a pending motion to remand.[4]

---

[4] The following cases are cited in support: "Hess v. Volkswagen Grp. of Am., Inc., 2016 WL 3483166, at *3 (N.D. Ala. June 27, 2016) ("[W]here a multi-district proceeding has been established, courts have routinely stayed motions pending rulings by the JPML." (quotation omitted)); Woods v. Merck & Co., 2005 WL 8158889, at *1 (S.D. Ala. Aug. 17, 2005) (staying proceedings and deferring ruling on jurisdictional issues pending the JPML's final transfer decision); Lucas v. Springhill Hosps., Inc., 2009 WL 160418, at *1 (S.D. Ala. Jan. 22, 2009) (same); Capers v. Ocwen Fed. Bank, FSB, 2005 WL 1154322, at *1 (S.D. Ala. May 12, 2005) (same); Hammers v. Bayside Orthopaedics, Inc., 2012 WL 7861448, at *1 (M.D. Fla. Dec. 4, 2012) (same); Fowler v. Hamilton Med. Ctr., Inc., 2008 WL 11336192, at *2 (N.D. Ga. May 7, 2008) (same); Britton v. NxCare, Inc., 2007 WL 9751834, at *1 (M.D. Ga. July 3, 2007) (same)." (Doc. 23 at 6).

However, before staying the case the court should review the merits of the remand. As set forth in DCH:

> A court should first give preliminary scrutiny to the merits of the motion to remand and, if this preliminary assessment suggests that removal was improper, the court should promptly complete its consideration and remand the case to state court." Betts v. Eli Lilly Co., 4335 F.Supp.2d 1180, 1182 (S.D. Ala. 2006) (internal quotations omitted); accord Moton v. Bayer Corp., 2005 WL 1653731, *2 (S.D. Ala. 2005). The Court derived this standard from Meyers v. Bayer AG, 143 F. Supp. 2d 1044, 1049 (E.D. Wis. 2001). Dozens of sister courts have adopted or applied Meyers as well,[1] and it has been described as the majority approach. Dunlap v. General Motors LLC, 2016 WL 7391049 at *2 (W.D. Mo. 2016). Kroger presents no reason the Court should abandon its carefully selected standard in this case, and its arguments in favor of a stay are fully addressed by the Court's analysis in Betts. 435 F. Supp. 2d at 1182-87…
>
> ****
>
> [1] E.g., Ellis v. Pneumo Abex Corp., 798 F. Supp. 2d 985, 988 (C.D. Ill. 2011); Ortiz v. Menu Foods, Inc., 525 F. Supp. 2d 1220, 1233 (D. Haw. 2007); Rutherford v. Merck & Co., 428 F. Supp. 2d 842, 845-46 (S.D. Ill. 2006); Alan v. Equifax, Inc., 2019 WL 5801891 at *2 (C.D. Cal. 2019); Meuchal v. Davol, Inc., 2019 WL 3887555 at *2 (D. Mont. 2019); City of Portland v. Purdue Pharma, LP, 2018 WL 6191127 at *4 (D. Me. 2018); Tucson Medical Center v. Purdue Pharma LP, 2018 WL 6629659 at *2 (D. Ariz. 2018); Gonzalez v. Ford Motor Co., 2017 WL 9614465 at *2-3 (N.D. Cal. 2017); Beshear v. Volkswagen Group of America, Inc., 2016 WL 3040492 at *2 (E.D. Ky. 2016); Dunlap v. General Motors LLC, 2016 WL 7391049 at *2 (W.D. Mo. 2016); Estate of Hoholek v. AbbVie, Inc., 2014 WL 7205586 at *2 (N.D. Ind. 2014); Curnow v. Stryker Corp., 2013 WL 5651439 at *3 (E.D. Mich. 2013); Bocock v. Medventure Technology Corp., 2013 WL 5328309 at *3 (S.D. Ind. 2013); Walker v. New England Compounding Pharmacy Inc., 2013 WL 1871343 at *2 (W.D. Va. 2013); Murphy- Pittman v. DePuy Orthopaedics, Inc., 2012 WL 6588697 at *2 (D.S.C. 2012); Halliburton Energy Services, Inc. v. BP Exploration & Production Inc., 2012 WL 149525 at *2 (S.D. Tex. 2012); Oregon ex rel. Kroger v. Johnson & Johnson, 2011 WL 1347069 at *3 (D. Ore. 2011); Mills v. TexAmerican Food Blending, Inc., 2008 WL 11383493 at *5 (N.D. Ala. 2008); Alegre v. Aguayo, 2007 WL 141891 at *3 (N.D. Ill. 2007); Baeza v. Tibbetts, 2006 WL 2863486 at *2 (D.N.M. 2006); Martin v. Merck & Co., 2005 WL 1984483 at *1 (E.D. Cal. 2005); Wisconsin v. Abbott Laboratories, 2004 WL 2055717 at *1 (W.D. Wis. 2004).

DCH, 2019 WL 6493932 at *2.

Based on the foregoing, the Court turns to the motion to remand.  See e.g. Wagner v. Volkswagen Group of America, Inc., 2016 WL 916421, *2 (S.D. Ala. 2016) (deciding motion to remand because the jurisdictional issues were straightforward); Moton v. Bayer Corp., 2005 WL 1653731, *1 (S.D. Ala. 2005) (deciding "simple, garden-variety attack on amount in controversy" because result of motion to remand was clear); Betts v. Eli Lilly and Co., 435 F.Supp.2d 1180, 1189 (S.D. Ala. 2006) (giving preliminary scrutiny to motion to remand). As noted *supra*, the Plaintiffs allege six of the same claims, rooted in state law, as the plaintiffs in DCH. A preliminary assessment of the motion to remand indicates it has merit. As reasoned in DCH, "federal subject matter jurisdiction is plainly lacking. This absence of jurisdiction was immediately obvious on the Court's preliminary assessment, and the Court therefore proceeds to resolve the motion to remand." DCH, 2019 WL 6493932 at *2. For the reasons set forth below, this preliminary assessment proves accurate.

**B.**     **Motion to Remand**

Plaintiffs move to remand claiming none of their claims provide for federal question jurisdiction. Plaintiffs cite Caterpillar, Inc. v. Williams, 482 U.S. 386, 392 (1987) in support which states, "plaintiff as master of her claims, 'may avoid federal jurisdiction by *exclusive* reliance on state law.'" (Doc. 3 at 5 (emphasis added by Plaintiffs)). Per Plaintiffs then, their state law causes of action do not allow for removal on the basis of federal question jurisdiction. (Id.). Again, this is virtually identical to the claims in DCH.  Moreover, the Defendants in this case are asserting analogous removal arguments as they did in DCH. These circumstances have been substantively addressed in DCH as follows:

> The complaint asserts six causes of action, all of them sounding in state law. That is not the end of the matter, because "federal jurisdiction over a state claim will lie if the federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial,

and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." Gunn v. Minton, 568 U.S. 251, 258 (2013); accord Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing, 545 U.S. 308, 314 (2005). Kroger argues that the complaint's claims against the distributor and retail defendants "require Plaintiffs to establish that Defendants breached duties established exclusively under federal law."… Kroger identifies the relevant federal law as the Controlled Substances Act ("CSA") and concludes that "the Complaint necessarily raises a federal issue: whether the Distributor Defendants violated the CSA."…

The complaint contains numerous references to the CSA, but that does not of itself establish that the complaint "necessarily raise[s]" a federal issue. The Supreme Court has addressed the meaning of this phrase in the context of Section 1338(a), which provides for federal jurisdiction "of any civil action arising under any Act of Congress" relating to patent and related intellectual property concepts: "[A] claim supported by alternative theories in the complaint may not form the basis for § 1338(a) jurisdiction unless patent law is essential to *each* of those theories." Christianson v. Colt Industries Operating Corp., 486 U.S. 800, 810 (1988) (emphasis added). Because "Section 1338(a) uses the same operative language as 28 U.S.C. § 1331…'[l]inguistic consistency requires us to apply the same test to determine whether a case arises under § 1338(a) as under § 1331." Holmes Group, Inc. v. Vornado Air Circulation Systems, Inc., 535 U.S. 826, 829-30 (2002) (quoting Christianson, 486 U.S. at 808). Appellate courts have routinely applied Christianson in the Section 1331 context.[2]

\*\*\*\*

Kroger identifies the duties imposed by the CSA and its implementing regulations, as referenced in the complaint, as duties to implement controls against the diversion of opioids, to monitor, investigate, and report suspicious orders, and to suspend fulfillment of such orders... The Court agrees that the complaint asserts the existence of such duties imposed by federal law; the question is whether the complaint pegs the liability of any defendant under any pleaded cause of action exclusively to the violation of this federal law.

According to Kroger, the complaint affirmatively states that it is the violation of these federally imposed duties that gives rise to the six asserted causes of action... None of the paragraphs cited by Kroger remotely support this proposition. On the contrary, it appears from a review of the complaint that the duties imposed by the CSA are mentioned largely to demonstrate how clear those duties—running parallel to comparable state duties—are and thus to accentuate how inexcusable was the alleged conduct of these large entity defendants, which operate on a massive and typically national scale.

In only one place does the complaint identify the CSA as a source of duty underlying an asserted claim. Count One, sounding in negligence (footnote

9

omitted), relies in part on negligence *per se*, and one of the statutes, violations of which is alleged to establish negligence *per se*, is the CSA... To that extent, the complaint relies on federal law to establish negligence. Count One, however also relies on Alabama statutes and regulations to establish negligence *per se*. Specifically, it relies on the Alabama Uniform Controlled Substances Act ("AUCSA") and regulations promulgated thereunder. (Id.)

****

Count One does allege that the defendants violated AUCSA by failing to maintain effective controls against the diversion of opioids and by excessively dispensing substances... The plaintiffs derive the former duty from Section 20-2-52(a)(1), which requires registering boards to consider an applicant's "[m]aintenance of effective controls against the diversion of controlled substances" in determining whether to register the applicant. The plaintiffs derive the latter duty from Section 20-2-54(a)(5), which authorizes a certifying board to suspend or revoke a registration upon finding the registrant has "excessively dispensed controlled substances."

****

Count One also alleges the defendants violated AUCSA by failing to report suspicious orders and by failing to operate a system to stop orders that have been, or should have been, flagged as suspicious... Kroger trains its firepower on these allegations, arguing that only the CSA imposes such duties... That proposition is far from certain.

Section 20-2-56 requires registrants to keep records consistent with federal law "and with any additional rules issued by" the certifying boards. The State Board of Pharmacy provides that "[c]opies of records and reports required by the Drug Enforcement Administration concerning increases in purchases or high or unusual volumes purchased by pharmacies, shall be forwarded to the Board of Pharmacy." Ala. Admin. Code r. 680-X-2-.23(2)(e)5. Alabama law therefore plausibly appears to require distributors to report suspicious orders to the state. The complaint expressly relies on this provision…

There appears to be no comparably specific Alabama statutory or regulatory requirement to operate a system to stop suspicious orders, but Kroger overlook Section 20-2-52(a)(1)'s[5] language regarding maintenance of effective controls against the diversion of controlled substances. Given Kroger's silence, the Court declines to assume that this provision could not support a state-law duty to operate such a system.

****

---

[5] In the instant case Plaintiffs reference Ala. Admin. Code r.680-X-2-.23, which set forth requirements for security, record keeping and inspections which aid in maintaining effective control against diversion of controlled substances.

As explained in the preceding paragraphs, while Count One rests negligence *per se* in part on violations of the CSA, it also rests negligence *per se* on violations of AUCSA and its regulations. Kroger has failed to show that all—or any—of these asserted state-law violations either depend on non-existent state-law duties supplied by statute or regulation or that the content of those state-law duties is measured by federal law. It thus has failed to show that these alleged violations do not constitute an "alternative theory" of negligence *per se* as to which federal law is not essential. Under Christianson, therefore, the complaint's negligence cause of action does not "necessarily raise" a federal issue.

Moreover, Count One does not assert only negligence *per se*. Count One also asserts negligence based on the general duty under common law to use reasonable care, with the duty arising from the foreseeability of harm to the plaintiffs... Nor does the complaint assert as common-law duties only duties identified with the CSA. Instead, the complaint asserts uniquely common-law duties against every defendant including a duty not to market opioids through misleading descriptions of risks, benefits and comparisons to other treatments, and the duty not to facilitate or encourage the flow or opioids into the illegal secondary market… Kroger offers no argument regarding this portion of the negligence cause of action and thus has failed to show that it does not provide an alternative theory of recovery under this claim as to which the federal law is not essential.

Kroger suggests that a federal issue is necessarily raised because the complaint "implicates the actions of" the Drug Enforcement Agency ("DEA") and because it "amounts to a collateral attack on an entire [federal] regulatory scheme."…The complaint does mention the DEA but, as explained above, that unremarkable fact falls short of satisfying the stringent requirements for showing that a federal issue is "necessarily raised" by the complaint. The complaint patently presents no "collateral attack" on the federal government's controlled substances regime—on the contrary, the complaint applauds that regime while criticizing the defendants for not following it. (footnote omitted). Moreover, Kroger's own authority reflects that a collateral attack on a federal regulatory scheme goes to "substantiality" (the third Gunn element), not to whether a federal question is "necessarily raised" (the first element).

****

> [2] E.g., Manning v. Merrill Lynch Pierce Fenner & Smith, Inc., 772 F.3d 158, 164 (3rd Cir. 2014); International Union of Operating Engineers v. County of Plumas, 559 F.3d 1041, 1045 (9th Cir. 2009); Broder v. Cablevision Systems Corp., 418 F.3d 187, 194 (2nd Cir. 2005); Dixon v. Coburg Dairy, Inc., 369 F.3d 811, 816 (4th Cir. 2004) (en banc); Howery v. Allstate Insurance Co., 243 F.3d 912, 918 (5th Cir. 2001); Long v. Bando Manufacturing, Inc., 201 F.3d 754, 759-60 (6th Cir. 2000).

DCH, 2019 WL 6493932 at *2-*5.

The logic applies equally to this case. "[A] claim supported by alternative theories in the complaint may not form the basis for [federal] jurisdiction unless [federal] law is essential to each." Christianson at 810. Thus, because federal law is not essential for Plaintiffs' claims of negligence per se, nuisance or any of the other asserted claims, there is no federal jurisdiction.

Defendants also cite to portions of Plaintiffs' complaint which reference DEA actions, CSA obligations, and allegations which state Defendants violated both federal and state law. Per the Defendants, "Plaintiffs' theory of liability also relies on an expansive reading of federal law that calls into question an agency determination." (Doc. 1 at 11). Specifically Defendants argue that paragraph 7 of the complaint which alleges that excessive numbers of opioids have been dispensed in Mobile County by Defendants would require Plaintiffs show "the annual production quotas set by DEA, pursuant to federal statute, were themselves unreasonable." (Doc. 1 at 12). However, the quoted language from Plaintiffs' complaint while incorporated in the all claims, is not the bases for the claims. Rather, paragraph 7 is an introductory paragraph describing the "Opioid Crisis in Alabama." Moreover, the allegation does not challenge DEA's determination of appropriate amount to be manufactured, but rather focuses on Defendants' allegedly excessive distribution of opioids in Alabama.

Also, even though Defendants cite the CSA as grounds for supporting federal question jurisdiction, "the Controlled Substances Act does not independently create a private right of action." Welch v. Atmore Community Hospital, 704 Fed. Appx. 813, 817 (11th Cir. 2017). "[T]he Eleventh Circuit recently reiterated that mere regulation of a drug under the CSA does not confer federal-question subject matter jurisdiction." Allen v. Endo Pharmaceuticals, Inc., 2018 WL 7352753, *3 (M.D. Ga. 2018) (citing Welch, 704 Fed. Appx. at 817). To support federal question jurisdiction the federal issue must be a "necessary element if one of the well-pleaded state claims."

Franchise Tax Bd. of State of Cal. v. Construction Laborers Vacation Trust for Southern California, 463 U.S. 1, 13 (1983). The state-law claims must "really and substantially" involve a dispute or controversy respecting the validity construction or effect of federal law to support federal question jurisdiction. Merrell Dow Pharmaceuticals Inc. v. Thompson, 478 U.S. 804, 814, n. 12 (1986) ("[T]his Court has sometimes found that formally federal causes of action were not properly brought under federal-question jurisdiction because of the overwhelming predominance of state-law issues.) (citing Shulthis v. McDougal, 225 U.S. 561, 569-70 (1912)). [6] "[A]any purported violation of the Controlled Substances Act [wa]s, at most, an element of [Plaintiffs']…state-law…claims." Dunlap v. G&L Holding Grp., Inc., 381 F.3d 1285, 1290 (11th Cir. 2004). See also Brown v. Endo Pharmaceuticuals, Inc., 38 F.Supp.3d 1312, 1320 (S.D. Ala. 2014) ("Even if the issue of duty were controlled by the CSA… § 1331 jurisdiction would remain inappropriate under the substantiality prong of the Grable test.").[7] "[T]he congressional determination that there should be no [private] remedy for the violation of this federal statute is tantamount to a congressional conclusion that the presence of a claimed violation of the statute as

---

[6] See e.g., Delaware ex rel. Denn v. Purdue Pharma L.P., 2018 WL 1942363 (D. Del. 2018) (finding the federal issues were not substantial enough to give rise to federal question jurisdiction); New Mexico ex rel. Balderas v. Purdue Pharma L.P., 2018 WL 2943246 (D.N.M. 2018) (finding federal jurisdiction was lacking because even though the complaint refers to the CSA, its regulations and the DEA, the defendants liability did not hinge exclusively on federal law).

[7] E.g., Little v. Purdue Pharma, L.P., 227 F.Supp.2d 838 (S.D. Ohio 2002) (in negligence action brought by drug users against OxyContin manufacturer, finding that plaintiffs had stated colorable claims and that "[a]ny federal questions which may exist are either defensive in nature or subsidiary to the state law questions, and the damages Plaintiffs seek do not implicate a 'central concern' of the ... CSA"); McCallister v. Purdue Pharma L.P., 164 F.Supp.2d 783, 794 (S.D. W.Va.2001) ("interpretive issues under the ... Controlled Substances Act are insufficient to provide removal jurisdiction, in the absence of a congressionally-mandated private cause of action"); Kim v. Interdent, Inc., 2010 WL 3155011, *9–11 (N.D. Cal. Aug. 3, 2010) (denying summary judgment on plaintiff's negligence claims based on common law duty of care against company that supplied drug on which decedent overdosed, while granting summary judgment as to CSA-related negligence claims).

an element of a state cause of action is insufficiently 'substantial' to confer federal-question jurisdiction." Merrell Dow Pharmaceuticals Inc. at 814 (1986).

The last issue before the Court is Defendants' consent to remove this case. [8] Plaintiffs contend removal was improper because McKesson's failed to obtain the required consent per 28 U.S.C. § 1446(b)(2)(a). In fact, Plaintiffs move for oral argument on the grounds that McKesson misrepresented consent to removal. (Doc. 27 at 2). For the reasons discussed *supra*, removal was improper because there were no federal issues necessarily raised. As such, Plaintiffs' contention and corresponding request for oral argument is **MOOT**.

### III.  Conclusion

For the reasons set forth above, the relief requested by the Sackler Defendants (Doc. 20) is **DENIED**, Plaintiffs' motion to remand (Doc. 3) is **GRANTED** and Defendants' motions to stay (Docs. 7, 23) is **DENIED**.

This action is hereby **REMANDED** to the Circuit Court of Mobile County, Alabama, from whence it came.

**DONE** and **ORDERED** this the 15th day of January 2020.

>  /s/ Kristi K. DuBose
>  KRISTI K. DuBOSE
>  CHIEF UNITED STATES DISTRICT JUDGE

---

[8] McKesson stated in its notice of removal that "[p]ursuant to 28 U.S.C. § 1446(b)(2)(a), all defendants that have been properly joined and served consent to removal." (Doc. 1 at 18).[8] McKesson asserts that for the defendants for which service was not attempted, effected, or was otherwise improper, consent to removal was not required.[8] But, Per McKesson, these defendants "[n]evertheless, … consent to removal." (Id. at 20). McKesson contacted counsel for other defendants and obtained their consent to removal. (Id.). It also contacted defendants not represented by counsel and obtained their consent. (Id.). For two defendants, not yet served, McKesson asserts their consent is not required.[8] (Id. (citing Johnson v. Wellborn, 418 F.App'x 809, 815 (11th Cir. 2011) ("The requirement that there be unanimity of consent in removal cases with multiple defendants does not require consent of defendants who have not been properly served.")).